UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AQUA TEXAS, INC., § | |
|    *Plaintiff/Counter-Defendant*, § | |
| § | |
| vs. § | Cause No. 1:23-cv-01576 |
| § | |
| HAYS TRINITY GROUNDWATER § | |
| CONSERVATION DISTRICT, § | |
|    *Defendant/Counter-Plaintiff*. § | |

## AQUA TEXAS, INC.'S REPLY IN SUPPORT OF
## ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Aqua Texas, Inc. ("Aqua"), and files this its Reply in Support of its Motion for Partial Summary Judgment, and respectfully states and alleges as follows.

### Partial Summary Judgment Against The District's Counterclaims

**I.    Aqua is entitled to summary judgment against the District's expired-permit claims.**

1.    The District claims that Aqua's permits expired in 2024. *See* Dkt. 110 ¶¶ 56-59. But that is contrary to Texas statute, which states that a permit "remains in effect until the final settlement or adjudication" if the district is not required to renew the permit because the permittee "is subject to a pending enforcement action." *See* TEX. WATER CODE § 36.1145(b)(2) & (c). Losing a permit is hugely significant, especially for a water utility. The *whole point* of this statutory provision is to prohibit districts from the blackmail approach the District is taking here— terminate all permits absent full capitulation, based on alleged violations, when those violations are still unadjudicated and any resulting penalties can still be resolved.

2.    First, the District claims the statute allows it to terminate permits during a pending enforcement action if, under subsection (b)(1), "required fees" are not paid. *See* Dkt. 118 ¶ 30.

But subsection (c) gives no such exception. If subsection (b)(2) applies—as it undisputedly does here—the permits "remain in effect." TEX. WATER CODE § 36.1145(c).

3.  Second, the District claims its sentence at Paragraph 48 of its May 21, 2025 pleading—expressly stating Aqua's permits were non-renewed due to the pending enforcement action, not due to non-payment of required fees—could not be "a judicial admission" because that pleading was superseded by an October 3, 2025 pleading. *See* Dkt. 118 ¶ 31. But Aqua is not relying on Paragraph 48 as a pleading. Rather, Aqua is relying on the District's corporate representative's testimonial admission, under oath, that such Paragraph 48 *was true*:

> Q.  The sentence in Paragraph 48 of the Second Amended Counterclaims, does that sentence contain correct information?
>
> A.  Yes, I would say so.

Dkt. 114-1 p. 201 at 41:19-22. Indeed, the District has offered no contrary evidence.

4.  Third, the District insists a "fair reading" of the District's email to Aqua regarding permit renewal for 2024 does *not* show any "express direction" that renewal fees would not be accepted. *See* Dkt. 118 ¶ 31. But no other fair reading is possible. Aqua asked for invoices to pay the 2024 permit renewal fees. *See* Dkt. 114-1 p. 26. The District sent no invoices, replied it "cannot renew applications," *see id.* p. 24, and never stated that Aqua "could or should pay renewal fees," *see id.* p. 4 ¶ 11.[1] In other words, under Texas Water Code section 36.1145(b)(1), no fee was "required by the district" in the first place.

5.  For any one of the above three independent bases, then, Aqua is entitled to summary judgment against the District's claim that Aqua's permits have expired. By express statute, and based on the summary judgment evidence, Aqua's permits "remain in effect."

---

[1] Aqua's employee Scot Foltz elaborated on these events in his deposition. *See* Dkt. 118-1 pp. 125 & 152. Meanwhile, the District told *other* permittees to file renewal applications pending disputes. *See id.* p. 229.

**II.   Aqua is entitled to summary judgment against the District's claims of waste.**

6.   The District claims that Aqua has "wasted groundwater" because (1) Aqua's water system has "line losses," *see* Dkt. 110 ¶¶ 60-61, and (2) Aqua's wastewater system has experienced leaks or spills, *see id.* ¶¶ 62-68. However, under Texas law, the District has no legal authority to regulate Aqua's water system's line losses, nor its wastewater system.

7.   The entirety of the District's Response on this issue is a straw-man argument that Aqua is alleging the District loses regulatory authority over groundwater once it enters Aqua's water pipes. *See* Dkt. 118 ¶¶ 32-37. That is not Aqua's argument. Yes, the District can generally regulate a permittee's use of groundwater to ensure there is no waste. *See* TEX. WATER CODE § 36.101(a) ("A district may make and enforce rules … to … prevent waste of groundwater…."). But, one must also take into account the concept of beneficial use.

8.   What the District overlooks is that groundwater delivered to a utility's residential customer constitutes beneficial use and is not waste. Aqua is a public water utility, providing retail water service to its retail water customers. *See* Dkt. 114-1 p. 1 ¶ 3. When a homeowner turns on her tap—whether at a sink, a hose, or a toilet—the utility has not committed waste in delivering that water to the homeowner. That is expressly reflected in the statutory definition of "waste" for purposes of groundwater district regulation. *See* TEX. WATER CODE § 36.001(8)(B) (waste only occurs when the groundwater produced is "not used for a beneficial purpose").

9.   That is the context for the Texas Supreme Court's holding that water line loss is not waste. Water loss is unavoidable during the beneficial use of transport to the end customer.

> Whether the use to which the water is put is lawful or unlawful cannot reasonably turn on whether some of the water put in the conduit escapes during transportation…. Having approved the transportation of artesian water by the means enumerated in the statutes where the water was to be put to a lawful use, with knowledge that some of it would escape during transportation, the Legislature could hardly have intended that what it had approved as legal should become illegal if some of it did escape.

*City of Corpus Christi v. City of Pleasanton*, 276 S.W.2d 798, 802 (Tex. 1955). The District cites no case law to the contrary. Under binding Texas Supreme Court precedent, Aqua is entitled to summary judgment against the District's claim of water line loss constituting "waste" of groundwater.

10. That is also the context for Texas case law precedent that discharges of water *after* use no longer constitutes groundwater. *See City of San Marcos v. Tex. Comm'n on Envtl. Quality*, 128 S.W.3d 264, 274 (Tex. App.—Austin 2004, pet. denied) ("Although the effluent is groundwater-derived, it is no longer groundwater."). Wastewater (*e.g.*, from drains or toilets) is created *after* water is delivered and used. A water utility obtains surface water or groundwater, treats it, and delivers it to retail customers (for their water taps). At *that* point of delivery, Aqua has "intentionally relinquished control" of the water. *See* Dkt. 118 ¶ 34. In other words, by definition, wastewater is not "waste" of groundwater because it never "escaped" *before* being "used for a beneficial purpose." *See* TEX. WATER CODE § 36.001(8)(B)-(F). Beneficial use has taken place. The District cannot then extend its regulatory authority to the wastewater created by the resident and collected by the sewer utility. Again, the District cites no case law to the contrary.

11. As discussed in Aqua's Motion, the *only* statutory exception that might allow a district to address a utility's wastewater service is at Texas Water Code chapter 7, subchapter H, which allows "a local government" to file a civil lawsuit in lieu of the state agency that regulates wastewater. *See* Dkt. 114 ¶ 24 (citing TEX. WATER CODE §§ 7.351 & 7.353). The District does not contest in its Response that it has not asserted any such claim here. Under governing Texas law, then, Aqua is entitled to summary judgment against the District's claim of wastewater spills constituting "waste" of groundwater.

### III. Aqua is entitled to summary judgment against the District's late-reporting claims.

12. The District claims that while Aqua did file all its groundwater pumping reports January 2021 through July 2024, some filings were late. *See* Dkt. 110 ¶¶ 70-77. However, no pre-suit notice was ever given on this issue of late reporting. *See* Dkt. 114-1 p. 187 (Admission 91).

13. The District does not deny that it never issued any NOAVs to Aqua for late reporting (except for the one 2023 NOAV that was withdrawn after it was disproven). And, all of the District's attempts to excuse this lack of notice fail as a matter of law. First, the District claims Aqua never requested a contested case hearing, *see* Dkt. 118 ¶ 39, but such request only applies when permittees have received a NOAV in the first place, *see* Dkt. 118-1 p. 58 (Rule 5.7), which Aqua undisputedly never received. Second, the District claims no statute requires NOAVs, *see* Dkt. 118 ¶ 40, but Aqua plainly based its Motion on "the District's rules and policies," *see* Dkt. 114 ¶ 29, and indeed the District's late-reporting claims themselves are based on those very *Rules'* requiring certain reports by certain deadlines, *see* Dkt. 110 ¶ 70. Third, the District contends Aqua "fails to identify any District Rules" which would require issuance of NOAVs, *see* Dkt. 118 ¶ 41, but that is precisely what Aqua did in its Motion, identifying District Rules 1.5.3, 5.7.5, and 10.1.2, as well as District policy described in the District's uncontested deposition testimony, *see* Dkt. 114 ¶¶ 29-31.

14. Importantly, the District has no response to the reason why pre-suit NOAVs are required for alleged District Rule violations. *See id.* ¶¶ 32-33. A contemporaneous NOAV process is necessary to create an evidentiary record regarding (1) whether Aqua was actually late, (2) if so, precisely how many days late Aqua was, and (3) whether there was a valid justification. Aqua is entitled to summary judgment against the District's 2024 counterclaim for late reporting, dating back to January 2021, when no pre-suit enforcement activity ever occurred.

## IV. Aqua is entitled to summary judgment against the District's deteriorated-well claims.

15. The District claims Aqua has "failed to cap or plug abandoned and/or deteriorated wells." *See* Dkt. 110 ¶¶ 78-81. The wells at issue have been capped for years, so the only question is whether any of them might nonetheless qualify as "deteriorated." *See* Dkt. 114-1 p. 6 ¶ 16.

16. As a matter of law, however, no well-related obligation could be triggered until the landowner "learns of its condition" that might qualify it as "deteriorated," upon which the landowner must act within 180 days. *See* TEX. OCC. CODE § 1901.255(c). Aqua has averred that it knows of no deficient condition, and has not been told of any such condition. *See* Dkt. 114-1 p. 6 ¶ 16. To avoid summary judgment, then, the District needed to identify some communication to Aqua identifying a deficient condition.

17. The District points to its June 10, 2024 original counterclaim. *See* Dkt. 118 ¶ 42. However, that pleading did not identify any deficiency, but only vaguely asserted certain wells were "abandoned and/or deteriorated."[2] *See* Dkt. 15 ¶¶ 67-70. Such vagueness was intentional, as the District later admitted, under oath, that as of September 10, 2025, it still did not know whether there were any deficient conditions. *See* Dkt. 114-1 p. 228 at 237:8 – 240:1.

18. The District's only other alleged notification is its *internal* "inspection findings" dated October 22, 2025. *See* Dkt. 118 ¶ 44. But those District notes were from the same site visit as the licensed well driller Chris Knox. *See* Dkt. 114-1 pp. 6-7 ¶ 17. Regardless what issues the District thinks "may" be found on future inspections, the undisputed conclusions from the driller himself were that the wells "were properly capped" and had "no visible deterioration." *See id.* Moreover, the only two issues that were identified, *see id.* pp. 230-31, were fully resolved by Aqua the very next day, *see id.* pp. 232-33. Aqua is entitled to summary judgment.

---

[2] Plus, that pleading referenced *different* wells. The District admits its first notice regarding the wells now placed at issue was its *amended* counterclaim in May 2025. *See* Dkt. 114-1 p. 194 (Admission 172).

19. The District also claims Aqua failed to notify the District of Aqua's "capping or plugging activities." *See* Dkt. 110 ¶ 79. However, as established in Aqua's Motion, the capping of Aqua's wells was done long before the District's Rules required any such notification. *See* Dkt. 114 ¶ 40. The District has not contested this point in its Response. Thus, Aqua is entitled to summary judgment against this claim too.

### Partial Summary Judgment For Aqua's Claims

**I.   Aqua is entitled to summary judgment that the permitting moratorium is invalid.**

20. By its lawsuit, Aqua challenges the District's moratorium on new groundwater permits, *see* Dkt. 61 ¶¶ 24-28, and specifically contends that the District lacks statutory authority to impose or maintain such a moratorium, *see id.* ¶¶ 88-91.

21. At the outset, the District is wrong that this claim has been dismissed. *See* Dkt. 118 ¶ 12. This Court's dismissal only encompassed Aqua's due process claims, not any claims of exceeding statutory authority. *See* Dkt. 31 p. 37; Dkt. 50 p. 16.

22. The District accuses Aqua of not pursuing applications (or perhaps variance requests) for new wells far enough during the moratorium. *See* Dkt. 118 ¶¶ 13, 19. That has no relevance to a claim that the moratorium itself is without legal authority. Aqua's statutory challenge has a broader scope than whether the individual permittee Aqua was or is entitled to some specific administrative relief.

23. The fundamental legal point, here, is that "drought management" does not universally justify whatever conduct the District wants to engage in. The moratorium operates as a prohibition of groundwater access for certain landowners. For over three years now, Aqua has been unable to use its property rights in its groundwater beneath its 18-acre tract of land. A district's ability to regulate and/or limit groundwater access does not allow *zero* access.

24. The Texas Legislature made this point clear at the beginning of Texas Water Code chapter 36: "The groundwater ownership and rights ... *entitle* the landowner ... to ... drill for and produce the groundwater below the surface of real property...." TEX. WATER CODE § 36.002(b)(1) (emphasis added). That right may be subject to minimum well spacing, minimum tract size, a regulatory permitting process, and district-wide production limits. *Id.* § 36.002(d). But there is no authority to deprive *some* landowners (who meet those requirements) of their groundwater solely due to the chronology of *when* those landowners apply for their wells. *Id.* § 36.002(c) ("Nothing in this code shall be construed as granting the authority to deprive or divest a landowner ... of the groundwater ownership and rights described by this section.").

25. The Texas Supreme Court has also made this point clear. Tellingly, the District does not even mention the key Texas Supreme Court case on this issue. A district cannot use drought to justify depriving a landowner of his rightful groundwater access. *See Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 843 (Tex. 2012) ("a landowner cannot be deprived of all beneficial use of the groundwater below his property merely because ... supply is limited"). Four years later, the Texas Supreme Court confirmed this holding, reversing a lower court action that operated as a "de facto moratorium" against the "undisputed right to access groundwater." *See Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 65 (Tex. 2016).

26. The District has not identified, and cannot identify, any statute or case law that would authorize it to outright prohibit groundwater production—even temporarily. It would be a disruptive and unprecedented decision for a federal court to grant Texas groundwater conservation districts such *carte blanche* authority to prohibit a landowner from producing his groundwater as "regulation." Aqua is entitled to summary judgment that the District's moratorium is without legal authority.

## II.    Aqua is entitled to summary judgment on its openness claims.

27.    Aqua seeks to enjoin the District's enforcement of four amended Rules because no prior disclosure thereof was given. *See* Dkt. 61 ¶¶ 95-98. Summary judgment can be granted based on a straightforward review of the proposed versions versus the adopted versions of Rules 3.7, 10.1.2, 13.2, and 15.2.1. *Compare* Dkt. 114-1 pp. 68-69, 77, 92-94 (proposed rules), *with id.* pp. 120-21, 129, 144, 146 (adopted rules).

28.    In response, the District contends that Texas case law insulates it from needing a renewed notice-and-hearing process for "minor changes." *See* Dkt. 118 ¶ 24.

29.    The District's contention is legally incorrect. The case law the District relies on deals with different administrative requirements than Texas Water Code chapter 36. It makes sense for APA (*i.e.*, Texas state agency) rulemaking to allow a differing adopted rule if it does not "materially alter the issues raised" in the proposed rule, because when state agency rules are adopted, the agency must (1) summarize all comments received and (2) explain the basis for the rule and responses to such comments. *See Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648-51 (Tex. 2003) (citing TEX. GOV'T CODE § 2001.033(a)(1)). In contrast, since the District need not provide any such explanation,[3] it must instead "make available a copy of all proposed rules" at least 20 days before they might be adopted. *See* TEX. WATER CODE § 36.101(d)(5). None of the District's case law addresses that section of the water code.

30.    The District's contention is also factually incorrect. The four Rule amendments about which Aqua complains are not "minor." Rule 3.7 added a new requirement of permit renewal applications and fees during pending enforcement actions, when no such issue was raised by the proposed rules. *Compare* Dkt. 114-1 pp. 68-69, *with id.* pp. 120-21. Rule 10.1.2 added a "historic"

---

[3] As a result, there is no actual *evidence* that the Rule changes about which Aqua complains were, in fact, due to "input received during deliberations and outside of executive session." *See* Dkt. 118 ¶ 23.

component for penalty deductions, when no such concept was raised by the proposed rules. *Compare id.* p. 77, *with id.* p. 129. Rules 13.2 and 15.2.1 proposed no changes, only to adopt multiple alterations. *Compare id.* pp. 92-94, *with id.* pp. 144, 146. Numerous other Rule changes *were* minor, but Aqua limited its claim to the substantial, unnoticed alterations. Aqua is entitled to summary judgment on its claim to enjoin any enforcement of the four above-identified rule amendments.

31.   Aqua also seeks to enjoin the District Board members from deliberating behind closed doors in executive session. *See* Dkt. 61 ¶ 99; TEX GOV'T CODE § 551.142(a).

32.   In response, the District advances a straw-man argument that Aqua is alleging the District cannot "enter" executive session or have "private consultation with its attorney" therein. *See* Dkt. 118 ¶¶ 26-28. Aqua does not seek to enjoin Board members' receiving legal counsel from the District's attorney in closed meetings. Rather, Aqua seeks to enjoin deliberations *among* Board members in closed meetings. *See* Dkt. 114 ¶ 58. Under statute, such deliberations must be "open to the public." *See* TEX. GOV'T CODE §§ 551.001(2), .002. This is because, under Texas law, Board members' "underlying reasoning" for their decisions must be public—not just the decisions themselves. *See Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).

33.   The District is incorrect that the transcript of its open meeting, *see* Dkt. 114-1 pp. 95-112, shows "pages of discussion and deliberation," *see* Dkt. 118 ¶ 26. Comments from employees or the public *to* the Board are not "deliberation." Under Texas law, the Board cannot refrain from making any comment, retire to executive session, and then "immediately upon reconvening into regular session … vote[] without discussion." *See Olympic Waste Servs. v. City of Grand Saline*, 204 S.W.3d 496, 503-04 (Tex. App.—Tyler 2006, no pet.). Aqua is entitled to summary judgment on its claim to enjoin executive-session deliberations among Board members.

WHEREFORE, for all of the foregoing reasons, Aqua Texas, Inc. respectfully requests that this Court grant Aqua Texas, Inc.'s Motion for Partial Summary Judgment as stated therein.

Respectfully submitted,

By: /s/ Ryan D.V. Greene
Paul M. Terrill III
State Bar No. 00785094
Ryan D. V. Greene
State Bar No. 24012730
Casey M. Cooper
State Bar No. 24140333
Elena M. Folgueras
State Bar No. 24140087
TERRILL & WALDROP
810 West 10th Street
Austin, Texas 78701
(512) 474-9100
(512) 474-9888 (Facsimile)
pterrill@terrillwaldrop.com
rgreene@terrillwaldrop.com
ccooper@terrillwaldrop.com
efolgueras@terrillwaldrop.com

ATTORNEYS FOR AQUA TEXAS, INC.

## **CERTIFICATE OF SERVICE**

      I hereby certify that the following counsel are being served on December 1, 2025, with a copy of this document via the Court's CM/ECF system.

Deborah Trejo
Teresa Christian
Ancel Escobar
KEMP SMITH LLP
2905 San Gabriel St., Suite 205
Austin, TX 78705
deborah.trejo@kempsmith.com
teresa.christian@kempsmith.com
ancel.escobar@kempsmith.com

_____
Ryan D. V. Greene